UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John Saulsberry,

Plaintiff,

Civ. File No. 00-1444 (PAM/JGL)

v.

**MEMORANDUM AND ORDER**

St. Mary's University of Minnesota,
a Minnesota non-profit educational institution,

Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons that follow, the Court grants in part and denies in part Defendant's Motion.

**BACKGROUND**

Plaintiff John Saulsberry[1] has been employed at Defendant St. Mary's University of Minnesota ("St. Mary's") as a security guard and director of security since 1993. Plaintiff is an African-American. In the fall of 1996, Plaintiff began taking undergraduate classes at St. Mary's. (Am. Compl. ¶ 10.) Because he was an employee, he paid only 25% of the cost of his tuition. (Id. ¶ 8.) Classes at St. Mary's campus in Minneapolis are held primarily in the evening, during Plaintiff's scheduled work hours. Plaintiff was allowed to sit in classes

---

[1] The Amended Complaint spells Plaintiff's name "Saulsberry." However, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment spells Plaintiff's name "Saulsbury." There is no explanation in the Memorandum for this discrepancy.

MAY 16 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

during his scheduled work time. At times, Plaintiff was in class for seven or eight hours per week, all during his regularly scheduled work hours. (Def.'s Reply Mem. at 5 (citing Saulsberry Dep. at 265).)

In early 1998, Plaintiff learned that other employees were receiving a 100% tuition reduction for classes taken at St. Mary's. (Am. Compl. ¶ 16.) Plaintiff alleges that these employees were all white. (Id.) On February 25, 1998, Plaintiff complained to a St. Mary's vice president, Daniel Mahoney, that he was being charged a higher tuition rate than other employees. (Id. ¶ 18.) After this complaint, Plaintiff contends that he was subjected to threats, race-based comments, and hostility. He also claims that the tuition disparity was not remedied. He brings claims for discrimination and retaliation under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01 et seq.

Plaintiff points to a number of incidents which he claims support his allegations of racial discrimination and retaliation in violation of federal and state law. First, he complains of a comment Vice President Maloney made to him in May 1998, concerning black children having "ashy" skin. (Am. Compl. ¶ 30.) Next, he complains that Vice President Maloney's assistant, John Pyle, referred to him as "Shaft" in September of 1998. (Id. ¶ 54.) Finally, he complains about a comment by a temporary receptionist who brought her dog to work, saying she wanted a black dog to protect her from a "black dog." (Id. ¶ 57.) Plaintiff understood the receptionist to be referring to him as a "black dog."

Most of Plaintiff's allegations, however, center on the appointment of Barbara Croucher to be his supervisor in June 1998. Plaintiff claims that the appointment of Croucher was in effect a demotion. Moreover, Plaintiff and Croucher had a stormy relationship, and Plaintiff contends that Croucher was rude to him, demeaned him, and harassed him. (Am. Compl. ¶¶ 42, 48.) Because Croucher was one of the white employees who received a 100% tuition reduction and about whom Plaintiff had complained, Plaintiff contends that her appointment to supervise him was more egregious, and evidenced St. Mary's discriminatory attitude.

Finally, although this allegation is not contained in the Amended Complaint, Plaintiff asserts that he was forced to move to a smaller office in retaliation for his complaints about the tuition reduction received by white employees. He also contends that he was limited in the number of classes he could take each quarter, and that white employees were not similarly limited.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence

in the light most favorable to the nonmoving party.[2] Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enterprise Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).Inadmissible hearsay evidence, however, may not be used to defeat a motion for summary judgment. Fireman's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993). In employment discrimination cases, the Eighth Circuit has cautioned that summary judgment should be granted sparingly. Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).

---

[2] Plaintiff confuses the summary judgment standard with the standard on a motion to dismiss. He repeatedly asserts that the Court must accept Plaintiff's version of the facts as true. While this is the case on a motion to dismiss, it is not the case on a motion for summary judgment. Rather, on a motion for summary judgment, the Court must only give Plaintiff the benefit of all reasonable inferences from the evidence presented.

## B. Discrimination Claims

### 1. Statutes of Limitations

St. Mary's argues that Plaintiff's claims of discrimination under the MHRA are untimely.[3] Claims under the MHRA must be filed within one year after the alleged act of discrimination. Minn. Stat. § 363.03, subd. 3. Title VII requires that a plaintiff file a charge with the Equal Employment Opportunity Commission ("EEOC") or analogous state agency within 300 days of an act of discrimination. 42 U.S.C. § 2000e-5. Here, the act of discrimination is the discrepancy between the tuition remission granted to Plaintiff and that granted to white employees. Plaintiff concedes that he learned of the tuition discrepancy in January 1998. Giving Plaintiff the benefit of the doubt and assuming he found out about the tuition difference on January 31, 1998, in order to preserve his claims under Title VII, Plaintiff had to file his discrimination charge by November 28, 1998. To preserve his MHRA claims, Plaintiff should have filed his charge by January 31, 1999. However, Plaintiff did not file a charge with the Minnesota Department of Human Rights until February 16, 1999, which is outside of both the Title VII and the MHRA limitations periods. He does not argue that the Court should toll the statutes of limitations for any reason. His claims of discrimination under Title VII and the MHRA are therefore untimely and must be dismissed.

---

[3] St. Mary's does not argue that Plaintiff's claims under Title VII are untimely. However, if the MHRA claims are untimely, the Title VII claims are necessarily untimely, because Title VII's statute of limitations is shorter than that under the MHRA.

2. Section 1981

Plaintiff's allegations of race discrimination in employment under § 1981 are analyzed using the same framework the Court would use to analyze claims under Title VII or the MHRA. See Jackson v. Missouri Pac. R.R. Co., 803 F.2d 401, 406-07 (8th Cir. 1986) (Title VII); Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983) (MHRA); Lawrence v. Univ. of Texas Med. Branch at Galveston, 163 F.3d 309, 311 (5th Cir. 1999) (§ 1981). Under the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), a plaintiff in a race discrimination claim bears the burden of establishing a prima facie case of discrimination. Specifically, the plaintiff must establish that he is a member of a protected group, that adverse employment action was taken against him, and a causal connection between membership in the group and the adverse employment action. Id. Once the plaintiff establishes a prima facie case, the defendant may rebut that showing by presenting evidence of a legitimate, non-retaliatory reason for the action it took against the plaintiff. Coffman v. Tracker Marine, 141 F.3d 1241, 1245 (8th Cir. 1998). If the defendant makes this showing, the plaintiff must then prove that the reason offered by the defendant was a pretext and that illegal retaliation was a "motivating reason" for the defendant's action. Id.

There is no dispute that Plaintiff has met his burden to prove the first element of his prima facie case under § 1981: he is a member of a protected group.[4] St. Mary's asserts that Plaintiff's discrimination claim fails at the second element, because he cannot show that St. Mary's took any adverse employment action against him. Alternatively, St. Mary's contends that even if some of the conduct of which Plaintiff complains could be construed as an adverse employment action, Plaintiff has failed to show a causal connection between Plaintiff's race and the actions allegedly taken by St. Mary's.

For the purposes of Plaintiff's remaining discrimination claim, the claimed adverse employment action is that St. Mary's granted 100% tuition reimbursement to white employees, while Plaintiff received only a 75% reimbursement. An adverse employment action is "that which materially alters the terms or conditions of the plaintiff's employment." Enowmbitang v. Seagate Tech., Inc., 148 F.3d 970, 973 (8th Cir. 1998). Such actions traditionally include "ultimate employment decisions" such as hiring, granting leave, discharging, promoting, and compensating. Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997). The tuition reimbursement program is unquestionably compensation. Thus, the tuition disparity of which Plaintiff complains constitutes an adverse employment action.

---

[4] The Court is generally loathe to comment on a party's submissions. In this case, however, deciphering Plaintiff's arguments was an arduous task, due in large part to Plaintiff's counsel's propensity for using his own oblique shorthand to refer to everything from fact questions (designated, without explanation, as "FQ"), to adverse employment action (designated "AEA"), to witnesses such as Vice President Daniel Maloney (designated "VPM"). Plaintiff's counsel would be well advised to eliminate such confusing and colloquial references in further submissions to this, or any other, Court.

As to his § 1981 discrimination claim, Plaintiff has met his burden of proving an adverse employment action.

Plaintiff has also succeeded in proving a causal connection between his race and the adverse employment action. He has shown that he received only a 75 % reimbursement for tuition expenses, while every white person who requested tuition reimbursement received 100% reimbursement.[5] On a motion for summary judgment, the Court must give Plaintiff the benefit of all reasonable inferences, and a reasonable jury could infer from the evidence that Plaintiff was denied 100% tuition reimbursement because he is African-American.

The burden then shifts to St. Mary's to provide a legitimate, non-discriminatory reason for the asserted differences in treatment. St. Mary's contends that it has met its burden because Plaintiff is not similarly situated to the white employees who received 100% tuition reimbursement. St. Mary's claims that Plaintiff is different from the other employees because Plaintiff was the only employee who took classes during his regular work hours. Moreover, St. Mary's asserts that it granted 100% tuition reimbursement to other African-American employees, proving that it had no discriminatory motive for treating Plaintiff differently.

---

[5] Although Plaintiff's allegation that he was limited in the number of courses he could take each quarter might constitute an adverse employment action for the purposes of either Plaintiff's discrimination or retaliation claims, it is clear that St. Mary's had a legitimate reason for instituting this requirement. The classes offered at St. Mary's are, in the main, night classes, and Plaintiff works at night. Thus, St. Mary's could legitimately ask Plaintiff to take only one class per quarter, to reduce the amount of time Plaintiff was away from his job.

Although it is true that Plaintiff must show that he was similarly situated "in all relevant respects" to the white employees who received differential treatment, Plaintiff does not have to prove his ultimate case of discrimination at this stage of the litigation. There are many disputed issues of fact as to whether Plaintiff was in fact similarly situated, and as to whether the differences between Plaintiff and the other employees were material for the purposes of the benefit denied Plaintiff. That question is a factual one that may not be resolved on a motion for summary judgment. Thus, with respect to Plaintiff's § 1981 claim of discrimination arising out of his receipt of only 75% tuition reimbursement, genuine issues of material fact preclude summary judgment.

**C. Retaliation Claims**

To prove his claims of retaliation under both federal and state law, Plaintiff must demonstrate that he engaged in a statutorily protected activity, that he suffered an adverse employment action, and that there was a causal connection between the adverse employment action and the protected activity. Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 270 (8th Cir. 1996); Coffman, 141 F.3d at 1245. Once Plaintiff establishes a prima facie case, St. Mary's may rebut that showing by presenting evidence of a legitimate, non-retaliatory reason for the action it took against Plaintiff. Coffman, 141 F.3d at 1245. If St. Mary's makes this showing, Plaintiff must then prove that the reason offered by St. Mary's was a pretext and that illegal retaliation was a "motivating reason" for St. Mary's action. Id.

As with his discrimination claims, there is no dispute that Plaintiff has satisfied the first element of his prima facie case: he complained about conduct he found discriminatory. However, Plaintiff's allegations regarding the adverse employment action element of his prima facie case of retaliation are different from those regarding his discrimination claims, and the retaliation allegations are somewhat unusual. Plaintiff does not contend that his pay was reduced, that he was terminated, or that he suffered other tangible job detriments as a result of his complaints about the tuition disparity. Rather, he contends that his complaints about the tuition disparity resulted in a hostile work environment, and that this hostile work environment constitutes an adverse employment action for the purposes of his prima facie case of retaliation. Thus, although Plaintiff does not raise a typical hostile environment claim, the Court must address whether the circumstances of Plaintiff's employment constituted a hostile work environment.

In order to prove a claim of a racially hostile work environment, Plaintiff must show that: (1) he belongs to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on his race; (4) the harassment affected a term, condition, or privilege of his employment; and (5) his employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action. See Noble v. Monsanto Co., 973 F. Supp. 849, 854 (S.D. Iowa 1997) (setting out prima facie case in context of sexually hostile work environment).

Plaintiff has met his burden with respect to the first three elements above. At the fourth element, Plaintiff must establish that the harassment he alleges was "so severe or pervasive as to alter the conditions of [his] employment and create an abusive working environment." Faragher v. Boca Raton, 524 U.S. 775, 786 (1998) (quotations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1158 (8th Cir. 1999) (quoting Faragher, 524 U.S. at 788).

The conduct that allegedly constitutes harassment is set forth in full in the Background section above. This conduct includes a single comment about "ashy" skin, a white employee referring to Plaintiff as "Shaft," a temporary employee who might have referred to Plaintiff as a "black dog," and the conduct of Ms. Croucher, none of which was objectively race-related or in any way severe and pervasive. At most, Plaintiff's allegations are merely isolated incidents and offhand comments that do not rise to the level of an abusive working environment. The conduct of which Plaintiff complains simply is not, as a matter of law, serious enough to constitute a hostile work environment. Thus, Plaintiff has not proved an adverse employment action and his retaliation claims fail.

Moreover, even if Plaintiff's allegations were sufficient to prove an adverse employment action, he has failed to show that any alleged adverse employment action is causally connected to the complaints he made regarding the tuition disparity. There is no

evidence, aside from Plaintiff's bare allegations, that Croucher knew about Plaintiff's complaints, and thus her conduct cannot be retaliatory. The only person who knew about the complaints was Vice President Maloney, and his one comment about "ashy" skin simply cannot be construed as retaliation. Plaintiff has not proved his retaliation claims, and St. Mary's is entitled to summary judgment on those claims.

**CONCLUSION**

Plaintiff's claims under Title VII and the MHRA are untimely. He has failed to prove his prima facie case with respect to his retaliation claims under § 1981, Title VII, and the MHRA. The only claim that remains is his discrimination claim under § 1981.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Clerk Doc. No. 30) is **GRANTED IN PART and DENIED IN PART**; and
2. Counts Two, Three, Four, and Five of the Amended Complaint are **DISMISSED WITH PREJUDICE**.

Dated: May 16, 2001

Paul A. Magnuson
United States District Court Judge